UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America    :
                            :
        v.                  :   File No. 1:04-CR-139
                            :
Harry T. Nuckols            :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 63)

Harry Nuckols, proceeding *pro se*, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Nuckols was convicted in 2005 of drug and firearm offenses, and sentenced to 75 months in prison. His sentence calculation included an enhancement for possession of a firearm in connection with another felony under Sentencing Guideline § 2K2.1(b)(5). Nuckols now claims that the enhancement was in error, particularly given the Court's finding that the guns were "primarily" for hunting or target shooting. For relief, he asks to be re-sentenced at a reduced sentencing range. For the reasons set forth below, I recommend that his motion be DENIED.

Factual Background

In September 2004, Vermont State Police executed a search warrant on Nuckols' residence and seized 33.9 pounds of marijuana and $33,620 in cash. The police also found

eight firearms, including five rifles, two shotguns and a revolver.  In a subsequent interview, Nuckols admitted that he had been growing marijuana at his residence for nearly two years, and was selling to buyers in New Jersey.

In November 2004, a grand jury returned a Superseding Indictment charging Nuckols with several offenses, including manufacturing marijuana and being a felon in possession of firearms.  Nuckols ultimately agreed to enter a guilty plea on those two counts in exchange for the government dropping the remaining counts in the Indictment.  The government also agreed to recommend that Nuckols receive credit for acceptance of responsibility if he cooperated truthfully during the pre-sentence investigation, and, if the offense level was determined to be 16 or more, an additional credit for acceptance of responsibility on the basis of timely notification of his intent to plead guilty.  (Paper 19).

The Presentence Report ("PSR") found that Nuckols was a career offender.  As a result, his Guideline calculation began at an offense level of 34.  After applying credit for acceptance of responsibility, the offense level was reduced to 31.  Given his criminal history (Category VI), the resulting Guideline range recommended in the PSR was 188 to

235 months.

Nuckols was sentenced on August 15, 2005. Consistent with the PSR, the Court began with an offense level of 31 after giving credit for acceptance of responsibility. The offense level calculation included a 4-level enhancement under § 2K2.1(b)((5) for possession of a firearm "in connection with" another felony. See U.S.S.G. § 2K2.1(b)(5). The Court then made a "substantial departure" to an offense level of 19. The departure was based on several factors, one of which was the Court's opinion that "even through strictly [Nuckols] comes within the career offender status because of the two prior convictions, one of which is barely in the 15 year range, that he does not fit, in my opinion, the, within the category . . . ." Sentencing Tr. at 20. The Court also found that, "[a]s far as the guns are concerned it appears, at least from looking at the Pre-Sentence Report, that the guns that were possessed were primarily for hunting or target shooting and not the type possessed for protection or illegal use in the drug trade." Id. at 22.

With an offense level of 19 and a criminal history category of VI, the Guidelines called for a sentence of 63

to 78 months.  The Court sentenced Nuckols to 75 months in
prison.  The Court also recommended that the Bureau of
Prisons ("BOP") designate him to a facility "that will allow
him to participate in a 500 [hour] comprehensive drug and
alcohol treatment program and any early release program
which is available to successful participants in such
program."  Id. at 24.  The Court further noted that it was
making this recommendation despite Nuckols' firearms
conviction, and that "the Court does not feel that the
defendant is a risk of danger and that the enhancement or
conviction for the firearms should not affect his security
designation."  Id. at 25.

At the conclusion of the sentencing hearing, the
government moved orally for reconsideration.  The motion was
denied, and the parties were advised of their respective
rights to appeal.  Neither party appealed.

Nuckols began serving his sentence immediately after
his August 2005 sentencing.  In February 2008, he allegedly
became eligible for the sort of "program and early release
consideration" recommended by the Court at sentencing.
(Paper 63 at 10).  However, because the § 2K2.1(b)(5)
enhancement was considered "violent in nature," his

application was denied.

Nuckols now argues in his § 2255 motion that the § 2K2.1(b)(5) enhancement was unlawful. Specifically, he contends that there was no evidence to support a finding that the guns in his house had any connection to his drug operation, and that the Court improperly shifted the burden of proving the lack of a connection onto the defendant. For relief, he asks the Court to remove the § 2K2.1(b)(5) enhancement, thereby arguably reducing his offense level to 15, and re-sentence him at the corresponding Guideline range.

## Discussion

I. Legal Standard

To prevail in a habeas corpus motion under § 2255, a defendant must demonstrate (1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose such sentence, (3) that the sentence was in excess of the maximum authorized by law, or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. If an issue is not raised on direct appeal, a § 2255 motion is procedurally barred unless it is based on constitutional

or jurisdictional claims or would result in a "complete miscarriage of justice." Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002). In addition, a defendant may not assert a claim in a § 2255 motion that he or she failed to raise on direct appeal unless the defendant shows cause for the omission and prejudice resulting therefrom, or actual innocence. See Bousley v. United States, 523 U.S. 614, 622 (1998); Campino v. United States, 968 F.2d 187, 190-91 (2d Cir. 1992).

II. Timeliness

The government first argues that Nuckols' motion is untimely. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets a one-year statute of limitations for § 2255 motions, running from the latest of the following four events:

> (1) the date on which the judgment becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Nuckols filed his § 2255 motion on April 20, 2009. Because he was convicted and sentenced in 2005, and no appeal was taken, he argues that his petition is nonetheless timely under the newly discovered facts exception in subsection (4). (Paper 63-2 at 1). Specifically, he claims that he did not understand the full import of the § 2K2.1(b)(5) enhancement until 2008 when he was denied access to a rehabilitation program.

To succeed under § 2255(f)(4), Nuckols must show that a reasonably diligent person in his circumstances would have not have discovered the relevant facts within the AEDPA's one year limitations period. <u>Wims v. United States</u>, 225 F.3d 186, 190 (2d Cir. 2000). As one court recently concluded, however, "[b]oth the plain language of AEDPA and judicial interpretation of the statute indicate that the AEDPA statute of limitations will run from the date that the Petitioner could have diligently discovered the facts underlying his claim, not the date upon which the Petitioner could have discovered the legal salience of those facts."

7

Rodriguez v. United States, 2008 WL 4663569, at *1 (N.D.N.Y. Oct. 20, 2008); see Shabazz v. Filion, 2006 WL 2792741, at *6 (N.D.N.Y. Sept. 26, 2006) (noting that "[t]he date of recognition of the *legal significance* of facts is irrelevant") (emphasis in original); Adams v. Greiner, 272 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) (citing Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or thorough diligence could discover) the important facts, not when the prisoner recognizes their legal significance.")).

In this case, there were no facts to be uncovered. Prior to sentencing, Nuckols' counsel objected to the § 2K2.1(b)(5) enhancement on the very grounds asserted by Nuckols in his current motion. (Paper 45 at 1). Accordingly, it was only the legal implications of the enhancement, and not the fact that they were arguably objectionable, that Nuckols did not fully comprehend until 2008.

Moreover, and despite Nuckols' claim of ignorance, the Court plainly signaled at sentencing that both the felon-in-possession conviction and the gun-related enhancement might impact Nuckols' conditions of confinement and rehabilitation

options.  As noted above, the Court made clear that, in its opinion, Nuckols was not a danger, that "the enhancement or the conviction for firearms should not affect his security designation," and that its recommendation of a treatment program "and any early release program" was made "despite noting the offense . . . to which the defendant pled guilty involved possession of firearms."  Sentencing Tr. at 24-25. Because these statements highlighted the possibility that the gun enhancement might have future consequences, any error in the lawfulness of that enhancement should have been challenged long before the limitations period expired.

The burden of showing due diligence under § 2255(f)(4) is on the petitioner.  <u>Shabazz</u>, 2006 WL 2792741, at *5 (collecting cases).  Here, Nuckols has failed to carry his burden.  An objection was made to the § 2K2.1(b)(5) enhancement prior to sentencing, but not pursued thereafter. For Nuckols to wait nearly four years after his sentencing to reassert the objection was not reasonably diligent.  <u>See</u>, <u>e.g.</u>, <u>Caro v. United States</u>, 2009 WL 3273847, at *3 (S.D.N.Y. Oct. 15, 2009) (§ 2255 motion barred as untimely where inmate convicted in 2003 sought re-sentencing in 2009 after being denied access to drug treatment program).  The

Court should therefore find that his § 2255 motion is untimely.

Further, there is no reason to excuse Nuckols' lack of timely action on the basis of equitable tolling. The AEDPA's one-year time limit to file a motion to vacate has been construed as a statute of limitations, rather than as jurisdictional in nature. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). Thus, when a petitioner can show that "extraordinary circumstances" prevented him from filing his petition in a timely fashion, courts may equitably toll the one-year limitations period. Id. Again, however, the petitioner must show that he "acted with 'reasonable diligence' during the period he wished to have tolled, but that despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing" within the limitations period. Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (quoting Smith, 208 F.3d at 17). Nuckols makes no such showing here, and his motion should be DENIED as untimely.

III. Failure to File Direct Appeal

The government also argues for dismissal on the ground that Nuckols did not file a direct appeal. There is no

dispute that Nuckols failed to object to the § 2K2.1(b)(5) enhancement on direct appeal. Accordingly, his claims are procedurally defaulted. See Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) ("In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review."). To pursue his defaulted claims, Nuckols must demonstrate either that there was cause for his default and that actual prejudice resulted, or that he is actually innocent of the crime to which he pled guilty. See De Jesus v. United States, 161 F.3d 99, 102 (2d Cir. 1998).

"Cause" is "something external to the petitioner" which "cannot fairly be attributed to him." Coleman v. Thompson, 501 U.S. 722, 753 (1991). Although Nuckols does not specifically argue either cause or prejudice, his motion suggests that he did not appeal because he was unaware that the enhancement would impact his rehabilitation, and consequently his early release, opportunities. The fact that Nuckols was ignorant of the potential consequence of the sentence enhancement does not constitute "cause." See Tapia-Garcia v. United States, 53 F. Supp. 2d 370, 378 (S.D.N.Y. 1999) (ignorance of the law is not "cause" under §

2255); United States v. Weiss, 902 F. Supp. 326, 327 (N.D.N.Y. 1995) (petitioner's ignorance of the legal consequences of his plea agreement did not constitute cause entitling him to bypass direct appeal).

In the absence of cause for the default, the Court need not determine whether there has been prejudice. Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985). Nonetheless, Nuckols' potential claim to prejudice is dubious at best. First, the § 2K2.1(b)(5) enhancement ultimately had no impact on the length of his sentence, which was instead driven by his status as a Career Offender. Specifically, there is no dispute that even without the enhancement, Nuckols' status as a Career Offender meant that his offense level calculation would have begun at level 34 prior to any reductions or downward departures.

To the extent that the enhancement now prevents him from certain programming, that programming was a recommendation by the Court and had no binding effect on the BOP. Moreover, any claim that the denial of such programming has had an impact on the length of Nuckols' sentence is purely speculative. Assuming that Nuckols was allowed into the drug rehabilitation program and completed

it successfully, an award of early release would be entirely within the discretion of the Bureau of Prisons. 18 U.S.C. § 3621(e)(2)(B) (sentence of an inmate "convicted of a non-violent offense . . . *may* be reduced by the Bureau of Prisons") (emphasis added). Consequently, Nuckols cannot show "actual prejudice" as required for relief from his procedural default. <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998).

Finally, Nuckols has failed to show actual innocence. The Supreme Court has noted that the actual innocence exception is "extremely rare" and should be applied only in "extraordinary cases." <u>Schlup v. Delo</u>, 513 U.S. 298, 321-22 (1995). To establish his "actual innocence" with respect to the enhancement, Nuckols must demonstrate by "clear and convincing evidence, [that he] . . . is actually innocent of the act on which his harsher sentence was based." <u>Spence v. Superintendent, Great Meadow Correctional Facility</u>, 219 F.3d 171, 172 (2d Cir. 2000). "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial . . . [and] "[g]iven the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected . . . .'" <u>Calderon v.</u>

Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

Here, Nuckols offers no new evidence, instead repeating the objection that this Court rejected at sentencing. Furthermore, as discussed above, the sentence he received would have been the same even without the § 2K2.1(b)(5) enhancement, given his status as a Career Offender.

Lastly, it is not clear that application of the enhancement was erroneous. Eight weapons were found in Nuckols' home, including rifles, shotguns and a revolver. Although the Court noted that the guns appeared to be primarily for recreational use, this finding did not necessarily rule out a § 2K2.1(b)(5) enhancement. As a recent Commentary on that section explains, possession of a weapon "in connection with" another felony can include weapons found "in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia. In these cases, application of the subsection [formerly b(5)] is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . ." See U.S.S.G. § 2K2.1 (2007) (commentary). Nuckols has failed to provide the Court with any evidence, much less

clear and convincing evidence, to demonstrate that the weapons found in his home did not qualify under § 2K2.1(b)(5).

Accordingly, his motion is procedurally defaulted, and should be DENIED.

## Conclusion

For the reasons set forth above, I recommend that Nuckols' motion (Paper 63), submitted pursuant to 28 U.S.C. § 2255, be DENIED.

Dated at Burlington, in the District of Vermont, this 28th day of October, 2009.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).